OPINION
Defendant-appellant Richard Craft appeals from his conviction and sentence, following a guilty plea, for Endangering Children. The trial court imposed community control sanctions. Craft contends that some of the specific conditions imposed as part of the community control sanctions are overbroad, in that they burden his freedom of association under both the Ohio and United States constitutions beyond a reasonable relationship to the State's legitimate purposes. He further contends that the trial court erred when it denied his pre-sentence motion to withdraw his plea, following a hearing on the motion, and that his trial counsel was ineffective.
We conclude that the record supports the trial court's decision to deny his pre-sentence motion to withdraw Craft's plea, and that the record fails to portray ineffective assistance of counsel. However, we agree with Craft that certain specific conditions in his community control sanctions unduly infringe upon his freedom of association. Accordingly, the community control sanctions imposed as part of Craft's sentence will be modified, as expressly indicated below in this opinion, and, as modified, the judgment of the trial court is Affirmed.
 I
Craft was indicted for Gross Sexual Imposition. His alleged victim was a female under the age of thirteen, who was in his charge. After a number of pre-trial proceedings, including a polygraph stipulation, and Craft's motion in limine, which was granted, at least in part, a plea bargain was entered into wherein Craft pled guilty to the lesser charge of Endangering Children. Subsequently, Craft moved to withdraw his plea. Following a hearing, the trial court took the matter under advisement, ultimately denying the motion by written entry.
The trial court sentenced Craft to five years of community control sanctions. Included in these sanctions were certain general conditions, and certain specific conditions. At issue in this appeal are the following specific conditions:
 "17. I will have no contact with any juvenile females under the age of 18 unless an adult who is aware of my history of sexual behavior and has been approved as a safeguard by my probation officer is present.
". . .
 "22. I will not loiter or spend time at locations for persons under the age of 18 years that are likely to be present including, but not limited to parks, playgrounds, school properties, arcades and public pools."
From his conviction and sentence, Craft appeals.
 II
Craft's First Assignment of Error is as follows:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY IMPOSING CONDITIONS OF (PROBATION) COMMUNITY CONTROL SUPERVISION WHICH ARE UNCONSTITUTIONAL AND AN ABUSE OF DISCRETION."
Craft challenges specific conditions seventeen and twenty-two, imposed as part of his community control sanctions, which are quoted in the preceding part. Craft cites State v. Green (March 29, 1999), Lake App. No. 98-L-023, for the proposition that: "A sentence which unreasonably impinges upon a defendant's constitutional rights or which violates the essentials of due process is necessarily a sentence contrary to law." (Quotation in State v. Green, supra.)
In State v. Jones (1990), 49 Ohio St.3d 51, which is cited by the State, the Ohio Supreme Court held that a condition of probation must be related to the interest of doing justice, rehabilitating the offender, and insuring his good behavior. The court held that in determining whether a condition of probation satisfies that test, "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." Id., at 53. In that case, the Ohio Supreme Court approved a condition requiring the offender to "have no association or communication, direct or indirect, with anyone under the age of eighteen (18) years not a member of his immediate family." The court held that a "commonsense" reading of the condition provided the offender with fair notice of what conduct is prohibited. The court held that the words used "should reasonably be interpreted as meaning an illicit, or potentially unlawful association or communication." Id., at 55.
Although the condition reviewed in State v. Jones, supra, was a condition of probation, we see no meaningful distinction between conditions of probation and conditions in community control sanctions.
The words "association or communication" suggest a meaningful encounter, rather than an unintended, chance, and fleeting encounter with a juvenile. An example of the latter might occur if Craft were to be approached, while waiting for a bus, by a juvenile female asking for change for a five dollar bill, with which to pay bus fare. This would seem to fit within the scope of the "contact" prohibited by specific condition 17, and yet not be within the scope of an "association or communication," as interpreted by the Ohio Supreme Court in State v.Jones, supra. Accordingly, we agree with Craft that specific condition 17 is overbroad.
With respect to specific condition 22, Craft complained at his sentencing that it would prevent him from taking a walk at Sugarcreek Trails, evidently a public reserve. He told the court that he and his friends enjoy hiking or camping at public parks and campgrounds throughout the United States. In response to this, the trial court observed: "Obviously, there is no reason to spend long periods of time by himself in parks."
We agree with Craft that, as specific condition 22 is worded, it is overbroad, because it would preclude him from spending time at outdoor parks and campgrounds that are not specifically designed or intended to be frequented by minors.
Craft's First Assignment of Error is sustained.
 III
Craft's Second Assignment of Error is as follows:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO PERMIT APPELLANT TO VACATE HIS PLEA, PRIOR TO SENTENCING WHICH PLEA WAS NOT KNOWINGLY AND FREELY GIVEN."
When Craft tendered his plea, the trial court asked him if he was "totally satisfied with [his trial counsel's] legal services," to which Craft responded in the affirmative. The trial court's plea colloquy was thorough. The trial court specifically inquired as follows:
 "THE COURT: And are you doing that [going forward with the plea] voluntarily?
"THE DEFENDANT: Yes, I am.
 "THE COURT: And Mr. McTigue [Craft's attorney] is not making you do this?
"THE DEFENDANT: No, he's not.
"THE COURT: This is your decision?
"THE DEFENDANT: Yes, this is my decision."
Craft made his motion to withdraw his plea before sentencing. The trial court conducted a hearing on the motion. At that hearing, Craft essentially argued that he had been coerced by his attorney into accepting the plea bargain that had been negotiated, and that he had not had adequate time to consider the matter.
Craft argues that, at one point during the hearing, the trial court cut him off. That part of the transcript is worth setting forth in full:
 "THE DEFENDANT: Yes, Your Honor. I want to deal with this issue, but I want to acquire a lawyer that doesn't want to plea bargain and talk me into a plea bargain.
 "When I speak sometimes to my attorney is like speaking to a brick wall when it's something that he doesn't want. If I want something he doesn't want it it [sic] and it's like speaking to a brick wall. And he gets his way.
 "If it's something that he doesn't want, well then fine, if it's not going the way he wants it to go. For example, the polygraph, I said absolutely not. And he continued and persisted in asking me over and over and over again until I finally said yes. He said: Well I need more time on the case and this will buy more time.
"I said, I'm not going to take a polygraph test. He said —
 "THE COURT: Let's get to the issue about the plea. You're asking me to allow you to withdraw your plea.
"THE DEFENDANT: Yes, Your Honor.
"THE COURT: Let's deal with that.
 "THE DEFENDANT: Yes, Your Honor. My attorney tends to get his way. And I believe that he wanted to plea bargain. I believe that he didn't want to go to Court. I wanted to go to Court. I want to prove my innocence. And he turned: Do you agree in retrospect it was a bad idea into a third degree felony."
Whereupon, Craft's explanation to the trial court continued for another two pages of transcript, at the end of which the trial court asked Craft if he had "anything else." When Craft responded in the negative, the trial court invited his trial counsel to make a statement. At the conclusion of the hearing, the trial court took the motion under advisement.
Ultimately, the trial court rendered a three-page decision denying the motion to withdraw. The trial court found that Craft had been represented by competent counsel, that he had been afforded a full plea hearing, conducted in accordance with Crim.R.11, and that during this hearing he had never expressed misunderstanding, confusing, hesitation or fear. In its decision, the trial court also referenced Craft's representation to the trial court, at the plea hearing, that he was totally satisfied with his lawyer's services, that his lawyer was not making him enter into a plea, and that the decision to enter the plea was his own decision. The trial court concluded by finding that Craft had not shown any reasonable or legitimate basis for the withdrawal of the plea.
We find no abuse of discretion. As in State v. Peterseim (1980),68 Ohio App.2d 211, the trial court found Craft's counsel to be competent, afforded Craft a full hearing, pursuant to Crim.R. 11, before accepting the plea, afforded Craft a fulll hearing on his motion to withdraw that plea, permitting Craft to present any and all arguments in support of the motion, and appears from the record to have given full and fair consideration to the motion to withdraw the plea.
Craft's Second Assignment of Error is overruled.
 IV
Craft Third Assignment of Error is as follows:
 "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN FAILING TO VACATE APPELLANT'S INVOLUNTARY PLEA WHERE HE HAD RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL."
Craft's argument in support of this assignment of error is that his trial counsel gave him no time to reflect upon the plea bargain that had been offered, instead coercing him, against his will, to accept the bargain and plead to the lesser charge. All of this depends upon Craft's statement to the court during the hearing on his motion to withdraw his plea, Craft having represented to the trial court at the plea hearing that he was fully satisfied with his lawyer's services, that his lawyer was not "making" him tender the plea, and that the decision to accept the offered plea bargain was his decision.
Craft's trial counsel, at the hearing on the motion to withdraw the plea, did not corroborate Craft, but noted only that ". . . it is fairly apparent to me that there was something in Mr. Craft's emotional makeup this particular Friday which clouded his perception of what I told him[,] [a]nd perhaps created some difficulty for him in the making of an informed decision because I know what the discussions were, but hearing what I heard today perhaps he heard words but the meaning did not come through."
Upon this record, the trial court did not abuse its discretion in rejecting Craft's contention that his trial counsel had coerced him into accepting the plea bargain offered by the State. Accordingly, Craft's Third Assignment of Error is overruled.
 V
Craft's First Assignment of Error having been sustained, and his Second and Third Assignments of Error having been overruled, the judgment of the trial court is modified in the following respects. Specific condition 17 of the conditions accompanying Craft's community control sanction is amended to read as follows:
 "I will have no association or communication, direct or indirect, with any females under the age of 18 unless an adult who is aware of my history of sexual behavior and has been approved as a safeguard by my probation officer is present."
Specific condition 22 is amended to read as follows:
 "I will not loiter or spend time at locations designed or intended to be frequented by persons under the age of eighteen years, including, but not limited to, neighborhood parks, playgrounds, school properties, arcades and public schools."
As modified, the judgment of the trial court is Affirmed.
BROGAN and GRADY, JJ., concur.